In the Matter of the CELOTEX
CORPORATION, et al.,
Debtor.

The CELOTEX CORPORATION,
et al., Plaintiffs,

v.

AIU INSURANCE COMPANY,
et al., Defendants.

Bankruptcy Nos. 90–10016–
8B1, 90–10017–8B1.
Adv. No. 91–40.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 23, 1993.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, for the Celotex Corp., et al.

Charles P. Schropp, Mark P. Buell, Schropp, Buell & Elligett, Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, Mark H. Kolman, Karen L. Bush, Mark D. Silverschotz, Anderson Kill Olick & Oshinsky, New York City, for plaintiffs.

Sara Kistler, Asst. U.S. Trustee, for Core Service Group.

John W. Kozyak, Kozyak Tropin Throckmorton & Humphreys, P.A., Miami, FL, for Asbestos Property Damage claimants Committee.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, for Creditors Committee of Unsecured Creditors.

William Knight Zewadski, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Tampa, FL, for Unofficial Asbestos Health Claim co-defendants Committee.

H.C. Goplerud, Honigman Miller Schwartz and Cohn, Tampa, FL, for Asbestos Health Claimants Committee.

James W. Greene, William E. Nowakowski, Bromley, Greene & Walsh, Washington, DC, for Columbia Cas. Co., Employers

Ins. of Wausau, Federal Ins. Co., Protective Nat. Ins. Co.

John A. Yanchunis, Blasingame, Forisz and Smiljanich, P.A., St. Petersburg, FL, for Continental Cas. Co., Citadel General Assurance Co., Columbia Casualty Co., American Re–Insurance Co., Eric Reinsurance Co., Zurich American Ins. Co.

John E. Peer, Long & Levit, San Francisco, CA, for Continental Cas. Co., Transp. Ins. Co.

Katherine E. Rakowsky, Philip C. Stahl, Irving C. Faber, Margaret B. Jones, Grippo & Eldon, Chicago, IL, for American Ins. Co., Nat. Sur. Co.

Rolf E. Gilbertson, Paul L. Gingras, Zelle & Larson, Minneapolis, MN, for Employers Ins. of Wausau.

Ronald L. Cohen, Seward & Kissel, New York City, Mary A. Lau, Robert J. Asti, Lau, Lane, Pieper & Asti, P.A., Tampa, FL, for Employers Ins. Co. of Wausau.

George A. Vaka, Russell S. Buhite, Fowler White Gillen Boggs Villareal and Banker, P.A., Tampa, FL, for North Star Reinsurance Co.

Roger E. Warin, Daniel C. Sauls, John A. Flyger, Steptoe & Johnson, Washington, DC, for Highlands Ins. Co., Old Republic Ins. Co., St. Paul Surplus Lines Ins. Co.

James P. Schaller, Christine A. Nykiel, Jackson & Campbell, Washington, DC, for American Home Assur. Co., AIU Ins. Co., Granite State Ins. Co., Lexington Ins. Co., Nat. Union Fire Ins. Co. of Pittsburgh, PA.

Thomas B. Mimms, Jr., MacFarlane Ferguson, Tampa, FL, for American Home Assur. Co., AUI Ins. Co., Highlands Ins. Co., Lexington Ins. Co., Old Republic Ins. Co., Granite State Ins. Co., National Union Fire Ins. Co. of Pittsburgh, PA, Employers Mut. Cas. Co., American Ins. Co., Nat. Sur. Co., St. Paul Surplus Lines Ins. Co.

Elizabeth B. Sandza, Cynthia T. Andreason, Leboeuf, Lamb, Leiby & MacRae, Washington, DC, for Gibraltar Ins. Co., Hudson Ins. Co.

David C. McLauchlan, Lord Bissell & Brook, Chicago, IL, Deborah M. Paris, Paris & Hanna, P.A., Tampa, FL, for Lloyds of London.

Jack Willis, Allianz Underwriters Ins. Co., Los Angeles, CA, for Allianz Underwriters Ins. Co.

Lynn Bregman, David Donovan, John Siddeek, Wilmer Cutler & Pickering, Washington, DC, for Ins. Co. of North America, California Union Ins. Co.

Meryl R. Lieberman, Daniel W. Morrison, III, Wilson, Elser, Moskowitz, Edelman & Dicker, White Plains, NY, for General Acc. Fire & Life Assur. Co.

William J. Bowman, Hogan & Hartson, Washington, DC, Robert H. Berkes, Barbara Hodous, Bodkin, McCarthy, Sargent & Smith, Los Angeles, CA, W. Gray Dunlap, Jr., Judith W. Simmons, De La Parte & Gilbert, Tampa, FL, for Hartford Indem. Co., Twin City Fire Ins. Co., First State Ins. Co.

Robert J. Bates, Jr., Maryann C. Hayes, Pope & John, Ltd., Chicago, IL, for Eric Reinsurance Co., American Re–Insurance Co., Zurich Ins. Co.

Virginia M. Vermillion, David Schroeder, Gleason, McGuire & Shreffler, Chicago, IL, for Employers Mut. Cas. Co., Allstate Ins. Co.

Wilson M. Brown, III, Lawrence A. Nathanson, Drinker Biddle & Reath, Philadelphia, PA, for American Motorists Ins. Co., Lumbermens Mut. Cas. Co.

Elizabeth G. Repaal, Harris Barrett Mann & Dew, St. Petersburg, FL, for Allstate Ins. Co.

Gregory J. Willis, Walton, Lantaff, Schroeder & Carson, Miami, FL, for Florida Ins. Guar. Co.

James E. Rocap, III, Cathy J. Burdette, Michael J. Barta, Miller, Cassidy, Larroca & Lewin, Washington, DC, Mark M. Schabacker, Arnold, Morris, Frank & Schabacker, P.A., Tampa, FL, for Aetna Cas. & Sur. Co.

Rick Dalan, St. Petersburg, FL, for Royal Indem. Co.

Edward M. Waller, Jr., Fowler White Gillen Boggs Villareal and Banker, P.A., Tampa, FL, for American Motorists Ins. Co.

Louis Schulman, Butler Burnette & Pappas, Tampa, FL, for Continental Ins. Co., Intern. Ins. Co., U.S. Fire Ins. Co., The American Centennial Ins. Co.

Robert J. Kelly, McElroy Deutsch & Mulvaney, Morristown, NJ, for Intern. Ins. Co., U.S. Fire Ins. Co.

Susan B. Morrison, Morrison, Morrison & Gregory, P.A., Tampa, FL, Thomas J. Quinn, William J. Cleary, Mendes & Mount, New York City, for Barrett and London Market Companies.

William E. McGrath, Jr., Golden, Rothschild, Spagnola & Difazio, Somerville, NJ, Michael M. Ingram, John A.C. Guyton, III, Alley & Ingram, Tampa, FL, for Transport Ins. Co.

Michael F. Aylward, Morrison, Mahoney & Miller, Boston, MA, Benjamin H. Hill, III, Dennis P. Waggoner, Hill, Ward & Henderson, Tampa, FL, for Transamerican Premier Ins. Co.

Warren D. Hamann, James F. Asher, Kimbrell & Hamann, Miami, FL, Michael

Gallagher, German, Gallagher & Murtagh, Philadelphia, PA, for Stonewall Ins. Co.

## ORDER ON THE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT NO COVERAGE EXISTS FOR ASBESTOS–RELATED BUILDING CLAIMS INVOLVING INTENTIONAL CONDUCT, PUNITIVE DAMAGES, OR EQUITABLE RELIEF

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for hearing upon the Insurance Company's [1] Motion for Partial Summary Judgment That No Coverage Exists for Asbestos–Related Building Claims Involving Intentional Conduct, Punitive Damages, or Equitable Relief.

The Insurance Company's Motion for Partial Summary Judgment contends no coverage exists for asbestos-related property damage claims [2] founded upon intentional conduct by Debtor, punitive damages against Debtor or equitable remedies imposed upon Debtor.[3] The Insurance Com-

1. The Celotex Corporation and Carey Canada Inc. (collectively referred to as "Debtor") brought this adversary proceeding against numerous insurance companies and insurance syndicates (collectively referred to as "the Insurance Company").

The instant Motion for Partial Summary Judgment was filed by AIU Insurance Company; American Home Assurance Company; American Motorists Insurance Company; Citadel General Assurance Company; Columbia Casualty Company; The Continental Insurance Company; Employers Mutual Casualty Company; Eric Reinsurance Company; Federal Insurance Company; First State Insurance Company; Florida Insurance Guaranty Association, Inc.; Gibraltar Casualty Company; Granite State Insurance Company; Hartford Accident & Indemnity Company; Highlands Insurance Company; Hudson Insurance Company; Lexington Insurance Company; Lumbermens Mutual Casualty Company; National Surety Corporation; National Union Fire Insurance Company of Pittsburgh, Pennsylvania; Old Republic Insurance Company; The Protective National Insurance Company of Omaha; Royal Indemnity Company; Twin City Fire Insurance Company; and Zurich Insurance Company. Lloyds of London is also a movant. It appears that "Lloyds of London" is in actuality Certain Underwriters at Lloyd's, London, and London Market Companies (the Plaisted group). In addition, Columbia General Assurance Company is listed as a

movant in the instant Motion for Partial Summary Judgment although no such company has ever been a party to this adversary proceeding. It appears the inclusion of Columbia General Assurance Company as a moving party was merely a scrivener's error.

The American Insurance Company; Certain Underwriters at Lloyd's, London, and London Market Companies (the Barrett group); Continental Casualty Company; Employers Insurance of Wausau; International Insurance Company; Transportation Insurance Company; and United States Fire Insurance Company joined in the above-described Motion for Partial Summary Judgment.

Insurance Company of North America and California Union Insurance Company filed a separate Motion for Partial Summary Judgment adopting by reference the above-described Motion for Partial Summary Judgment. Royal Indemnity Company joined in this separate Motion for Partial Summary Judgment.

2. The term "property damage" is used in this Order for convenience only and should not be construed as a determination by this Court that the disputed claims actually involve property damage as defined in the relevant insurance policies.

3. The Insurance Company's Memorandum filed in support of its Motion for Partial Summary Judgment also sets forth its position with regard

pany has focused on three complaints ("the sample complaints") which, according to Debtor, contain allegations typical of all the underlying complaints asserting asbestos-related property damage. The Court has considered all arguments and evidence consistent with ruling on a motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court finds no genuine issue of material fact exists and judgment on the issues discussed below is appropriate as a matter of law. Accordingly, the Court finds as follows:

## DISCUSSION

### I. Intentional Conduct

The Insurance Company contends the sample complaints contain allegations of asbestos-related property damage resulting from intentional conduct by Debtor, including concert of action, conspiracy, intentional tort, fraud and misrepresentation, which, if proven, is not covered by insurance. The Insurance Company maintains the insurance contracts, basic doctrines of insurance law and public policy allow coverage only for damages resulting from fortuitous or accidental events. The Insurance Company argues allowing coverage for damages resulting from Debtor's intentional conduct violates the "fortuity requirement" inherent in all insurance contracts. The Insurance Company asserts this unstated, yet overriding, fortuity requirement exists apart from the specific exclusion for injuries or damage either intended or expected by the insured.[4] In addition, the Insurance Company argues imposing liability for specific intent torts is meant to punish the wrongdoer and allowing insurance coverage for such liability would decrease the effectiveness of the punishment.

Debtor argues the Insurance Company's focus on alleged intentional acts and the general fortuity requirement is misplaced. Debtor states the proper analysis should look to whether Debtor intended the results of its actions. Only those claims for damages which were specifically intended by Debtor should be denied coverage.

Debtor also asserts since the underlying complaints seek recovery based upon various theories, including alleged intentional conduct, it would be premature to make any ruling on whether claims for damages resulting from intentional conduct, however defined, are covered. Debtor suggests making a decision as to coverage should wait until a factual determination is made in the underlying actions as to whether Debtor actually committed the acts alleged.

The Court finds unpersuasive Debtor's argument that deciding these particular coverage issues at this point would be premature.[5] The issues to be resolved in this proceeding are sufficiently removed from those pending in the underlying actions so as to allow for their adjudication. The matters before this Court do not require a determination that Debtor actually committed the intentional torts alleged or that punitive damages or equitable relief should actually be awarded against Debtor. Rather, the Court is charged with the task of deciding what effect such adjudications, both past and future, in other forums have or will have upon the insurance coverage available to Debtor. Furthermore, as was

---

to choice of law. Under the Court's order granting motion for partial summary judgment on choice of law, entered November 24, 1992, *lex loci contractus* (the law of the jurisdiction where the contract is executed) is the appropriate choice of law in contract interpretation actions. Following this rule, it appears initially the laws of the states of Florida, Illinois and Ohio are relevant to the instant decision.

**4.** In general, the policies at issue provide coverage for damages arising out of bodily injury or property damage caused by an occurrence. An occurrence is defined as an accident, including injurious exposure to conditions, which results during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

**5.** This argument is also raised by Debtor with regard to coverage for punitive damages discussed below. However, for the same reasons it is equally unavailing on that issue as well.

aptly indicated by the Insurance Company, Debtor's argument on this point is somewhat disingenuous since this entire proceeding was brought by Debtor to seek a declaration of coverage rights for what is, at least in part, hypothetical liability.

■ The Court agrees with the Insurance Company's argument that insurance is generally only available to cover damages resulting from fortuitous or accidental events. However, the Court finds intentional acts may cause unintended results, damages from which may be covered by insurance. The relevant case law clearly supports the conclusion that the appropriate point of inquiry is the intent to cause damage or injury rather than intent to perpetrate the actions which cause those injuries. As a general proposition, if the insured deliberately performed an act with the intent to cause the resulting damage, insurance coverage is not available to indemnify the insured against the costs associated with those damages. However, this rather simple conclusion masks a more complex theoretical inquiry into the nature of the particular intent required to result in an exclusion of insurance coverage.

Many courts have dealt with the problem of what degree of intent to harm is necessary to find insurance coverage is not available. The result of these various opinions has been a hodgepodge of standards ranging from a strict subjective intent requirement to a rather lenient objective gauge of intent.[6]

■ This Court, having reviewed the various cases dealing with this issue, finds the courts of Ohio and Florida have adopted a standard requiring a showing of the insured's specific intent to injure or cause damage or the insured's belief that such damage or injury was substantially certain to occur. Thus, as to those policies

subject to interpretation under Ohio or Florida law, insurance coverage for asbestos-related property damage will not be available where there is a showing that Debtor specifically intended to cause the damage or acted with the knowledge that the damage was substantially certain to occur.

This conclusion is supported by the relevant case law on the issue. The Supreme Court of Ohio recently found a child who fired a BB gun in the direction of a group of children neither intended nor expected to cause the resulting injury where the child did not believe the projectile would strike any member of the group. *Physicians Ins. Co. v. Swanson*, 58 Oh.St.3d 189, 569 N.E.2d 906 (1991). In finding inapplicable the policy exclusion for injuries caused intentionally, the court cited *Allstate Ins. Co. v. Steinemer*, 723 F.2d 873, 875 (11th Cir. 1984), which held an intentional injury "exclusion will not apply if the insured ... has no intent to commit harm, even if the act involves the foreseeable consequences of great harm or even amounts to gross or culpable negligence." The court also quoted the Supreme Judicial Court of Massachusetts holding an "act of an insured is still an 'accident' [and not expected] ... if the insured does not specifically intend to cause the resulting harm or is not substantially certain such harm will occur." *Quincy Mut. Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 469 N.E.2d 797, 799–800 (1984).

Several state courts in Florida, and some federal courts interpreting Florida law, have confronted the issue of what constitutes intentional conduct for insurance coverage purposes, all of which offer various permutations of the definition of intent depending upon the specific factual scenario presented. *See e.g., Aromin v. State Farm Fire & Cas. Co.*, 908 F.2d 812 (11th

---

6. *See* Tracy E. Silverman, *Voluntary Intoxication: A Defense to Intentional Injury Exclusion Clauses in Homeowner's Policies?*, 90 Mich. L.Rev. 2113, 2120–2125 (1992). The author categorizes the various opinions on this issue according to those that (1) use an "objective test," denying coverage where a "reasonable insured would have foreseen the injuries resulting from his intentional actions;" (2) use a strict "subjec-

tive test," denying coverage "only upon a finding that the insured actually intended both the act and the precise injury which resulted;" or (3) use an intermediate "inferred-intent test," requiring sufficient evidence to impute "to the insured as a matter of law an intent to cause injury based on the nature and circumstances of the insured's act."

Cir.1990); *Steinemer,* 723 F.2d at 875; *Ranger Ins. Co. v. Bal Harbour Club,* 549 So.2d 1005 (Fla.1989); *Swindal v. Prudential Prop. & Cas. Ins. Co.,* 599 So.2d 1314 (Fla. 2d DCA 1992); *Spengler v. State Farm Fire & Cas. Co.,* 568 So.2d 1293 (Fla. 1st DCA 1990), *review denied,* 577 So.2d 1328 (Fla.1991). However, this Court finds all the relevant cases gravitate around the basic standard established in *Hartford Fire Ins. Co. v. Spreen,* 343 So.2d 649 (Fla. 3d DCA 1977). In *Spreen,* the Florida District Court of Appeal for the Third District held an intentional tort exclusion does not apply where "the insured does not intend to cause any harm to the third party ... even though damages are caused by the insured's intentional acts and were reasonably foreseeable by the insured." *Spreen,* 343 So.2d at 650–51. The court also indicated a provision in a policy which excludes coverage for damages which were either expected or intended by the insured encompasses those situations where " 'the insured has acted with the specific intent to cause harm to a third party.' " *Spreen,* 343 So.2d at 652 (quoting *Cloud v. Shelby Mut. Ins. Co.,* 248 So.2d 217, 218 (Fla. 3d DCA 1971)).

Illinois, however, has opted for a standard unlike that employed by the courts of Florida and Ohio. In *Bay State Ins. Co. v. Wilson,* 96 Ill.2d 487, 71 Ill.Dec. 726, 728, 451 N.E.2d 880, 882 (1983), the Supreme Court of Illinois held as to those policies which contain an exclusion for damages either intended or expected by the insured, the expected standard requires a lower degree of proof than the intended standard. Furthermore, the court held injuries which are "reasonably anticipated" by an insured are "expected" injuries and are therefore within the intentional injury exclusion in a policy which excluded "intended" or "expected" injuries. *Wilson,* 71 Ill.Dec. at 728, 451 N.E.2d at 882. This statement by the Illinois Supreme Court indicates adoption of a relatively objective test for intent when compared to the decisions of the courts in Florida and Ohio. *See also West Am. Ins. Co. v. Vago,* 197 Ill.App.3d 131, 143 Ill.Dec. 195, 553 N.E.2d 1181, *appeal denied,* 133 Ill.2d 574, 149 Ill.Dec. 340, 561 N.E.2d 710 (1990); *J. Roth Builders, Inc. v. Aetna Life & Cas. Co.,* 151 Ill.App.3d 572, 503 N.E.2d 782 (1987); *Shook v. Tinny,* 122 Ill.App.3d 741, 78 Ill. Dec. 58, 461 N.E.2d 642 (1984). Consequently, as to those policies which are subject to interpretation under Illinois law and which contain an exclusion for coverage for asbestos-related property damage which was expected by the insured, coverage will not be available if there is a showing Debtor committed an act which resulted in damages which were intended or reasonably anticipated by Debtor.

## II. Punitive Damages

The next issue raised by the Insurance Company is whether coverage is afforded Debtor for punitive damages sought in the underlying complaints for Debtor's alleged malicious, willful, wanton or reckless conduct. The Insurance Company contends the public policy of all relevant states bars recovery by an insured for claims made for punitive damages imposed on the insured, even in cases where the liability was vicarious. Also, as with permitting coverage for claims resulting from intentional acts, the Insurance Company argues allowing insurance coverage impedes the policy of deterrence which lies at the base of punitive damages.

Debtor argues first the Court should look to the law of the state where the punitive damages were imposed since that state has the greatest interest in the punishment of the wrongdoer. Debtor asserts if insurability of punitive damages was merely an issue of contractual intent, the Court could simply look to the language of the contract and the intent of the parties, rather than public policy, to resolve any dispute.

Second, Debtor argues even in those states which place restrictions on coverage of punitive damages, coverage may still depend upon the reason the punitive damages were imposed. Debtor states both Florida and Illinois permit coverage where the punitive damages were imposed in vicarious liability situations.

■ The Court must deal first with Debtor's argument that the appropriate law to apply in determining whether insurance coverage is available for punitive damages is that of the state in which the damages were imposed. As already noted, any coverage issues under the insurance contracts are governed by the law of the state where the insurance contract was executed. Consequently, Debtor's argument is without merit.

Having dealt with this initial point, the Court finds the law of the relevant jurisdictions compels the conclusion that insurance coverage generally is not available for punitive damages arising out of the insured's own misconduct. However, exceptions to this general rule do exist.

■ In Florida, the rule appears to be well established: public policy prohibits insurance for punitive damages for the direct wrongful conduct of the insured, even where the insurance policy specifically provides for such insurance. *Northwestern Nat'l Cas. Co. v. McNulty*, 307 F.2d 432 (5th Cir.1962); *U.S. Concrete Pipe Co. v. Bould*, 437 So.2d 1061 (Fla.1983). However, the Florida courts do provide an exception to this rule for vicarious liability. Specifically, the cases make clear that the mere fact punitive damages may be assessed against a vicarious wrongdoer does not prohibit the shifting of the punitive damage liability to an insurance carrier where the insurance policy so permits. *Bould*, 437 So.2d at 1064.

■ Likewise, the Illinois and Ohio courts have adopted similar rules. Public policy bars coverage for punitive damages where those damages were imposed due to wrongdoing committed by the insured. *U.S. Fire Ins. Co. v. Beltmann N. Am. Co.*, 695 F.Supp. 941 (N.D.Ill.1988), *rev'd on other grounds*, 883 F.2d 564 (7th Cir.

1989); *Beaver v. Country Mut. Ins. Co.*, 95 Ill.App.3d 1122, 51 Ill.Dec. 500, 420 N.E.2d 1058 (1981); *Casey v. Calhoun*, 40 Oh. App.3d 83, 531 N.E.2d 1348 (1987); *State Farm Mut. Ins. Co. v. Blevins*, 49 Oh.St.3d 165, 551 N.E.2d 955 (1990). Both states, however, create a vicarious liability exception. *U.S. Fire Ins. Co.*, 695 F.Supp. at 949; *Beaver*, 51 Ill.Dec. at 503, 420 N.E.2d at 1061; *Blevins*, 551 N.E.2d at 958.

■ Accordingly, in light of the case law cited above, this Court finds insurance coverage will not be available for punitive damages related to asbestos-related property damage where those punitive damages are imposed upon Debtor for wrongs committed directly by Debtor. However, coverage is available where punitive damages are incurred by Debtor based upon Debtor's vicarious liability provided the relevant insurance policy affords coverage for punitive damages.[7]

### III. Equitable Relief

The last issue raised by the Insurance Company is whether insurance coverage is available for purely equitable relief such as restitution and injunctions. The Insurance Company argues such relief does not constitute damages as defined in the insurance policies and as interpreted by the relevant case law, and therefore, costs incurred in satisfying such relief are not covered. The Insurance Company recognizes several courts have refused to distinguish between equitable relief and damages at law in cases involving liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601–9675 (1988) (CERCLA).[8] However, none of the sample complaints involve CERCLA claims.[9]

Debtor counters by arguing the costs of removing asbestos from buildings have

---

**7.** The issue of what constitutes vicarious liability was not directly raised by the Insurance Company. Consequently, this Court makes no determination as to whether any of Debtor's actual or potential liability is vicarious.

**8.** *See Hudson Ins. Co. v. Double D Mgmt. Co.*, 768 F.Supp. 1542 (M.D.Fla.1991) and cases cited therein, and Michael J. Cadigan, *Environmental*

*Liability: Bankruptcy and Insurance Issues*, 22 Envtl.L. 1279 (1992).

**9.** Defendant Employers Insurance of Wausau disagrees with any assertion in the Insurance Company's Memoranda that CERCLA removes the distinction between equitable relief and legal damages.

been widely held to constitute covered damages. Debtor further cites policy language, which Debtor asserts is typical of the policies at issue in this proceeding, which provides coverage for "all sums which the insured shall become legally obligated to pay as damages" as a result of property damage. Debtor argues the Insurance Company's effort to exclude equitable relief from the term damages is irrelevant since the claims at issue are founded in third-party liability claims for money damages which, under the terms of the insurance policies, constitute damages resulting from property damage.

■ The Court finds, at least with regard to those policies governed by Illinois and Ohio law, insurance coverage is available for the costs of compliance with mandatory injunctions and restitution orders relating to removal of Debtor's asbestos-containing products from buildings. In a recent case, the Supreme Court of Illinois has ruled the term "damages" encompasses both legal and equitable remedies. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 114, 180 Ill.Dec. 691, 701, 607 N.E.2d 1204, 1214 (1992). Although the *Outboard Marine* case involved liability for government mandated clean-up of polluted waterways, the court did not limit its reasoning to those instances where costs are incurred due to required clean-up under CERLCA or other environmental statutes. Citing the broad protective purposes inherent in comprehensive general liability insurance policies, the Supreme Court of Illinois stated:

> "[D]amages" connotes money one must expend to remedy an injury for which he or she is responsible, irrespective of whether that expenditure is compelled by a court of law in the form of compensatory damages or by a court of equity in the form of compliance with mandatory injunctions.

*Outboard Marine*, 154 Ill.2d at 116, 180 Ill.Dec. at 703, 607 N.E.2d at 1216. The court went on to indicate if the insurer's theory were adopted, the issue of whether "damages" were involved, and thus whether coverage was provided, would rely some-

what precariously on the damaged party's choice of remedies. *Outboard Marine*, 154 Ill.2d at 116, 180 Ill.Dec. at 703, 607 N.E.2d at 1216.

Likewise, a recent Ohio Court of Appeals case rejected the distinction between equitable and legal remedies in its interpretation of the term "damages" for insurance coverage purposes. *Sanborn Plastics Corp. v. St. Paul Fire & Marine Ins. Co.*, No. 91–G–1668, 1992 WL 398460, 1992 Ohio App. LEXIS 6585 (Ohio Ct.App. December 31, 1992). In that case, the insured sought a declaratory judgment that its insurer had a duty to defend and indemnify it against a third-party complaint filed by an entity which was the defendant in a separate action brought by the Environmental Protection Agency under several federal environmental statutes. In ruling the insurer had a duty to indemnify and defend in the action, the court apparently rejected the insurer's argument that the clean-up costs constituted equitable rather than legal relief and therefore were not covered as damages. *Sanborn Plastics*, 1992 WL 398460, at *10, 1992 Ohio App. LEXIS 6585, at *27–29. Furthermore, the court specifically indicated no distinction could be made between the claims for clean-up costs sought by a government entity and an individual party. According to the court, both constituted damages under the insurance policies. *Sanborn Plastics*, 1992 WL 398460, at *10, 1992 Ohio App. LEXIS 6585, at *28–29.

■ Florida case law, however, continues to support the distinction between legal relief and equitable relief with regard to interpreting the term "damages" for insurance coverage purposes. In the controlling, albeit somewhat archaic, case on the issue, the United States Court of Appeals for the Fifth Circuit ruled the costs of complying with a mandatory injunction do not constitute "damages" for insurance coverage purposes. Instead, the term "damages" is strictly limited to legal rather than equitable claims. *Aetna Cas. and Sur. Co. v. Hanna*, 224 F.2d 499 (5th Cir. 1955). Although the case has been limited by some courts to those instances where

the costs were not incurred pursuant to governmentally enforced environmental statutes, it seems clear *Hanna* continues to be the law of Florida. *Hudson Ins. Co. v. Double D Mgmt. Co.*, 768 F.Supp. 1542 (M.D.Fla.1991); *Hayes v. Maryland Cas. Co.*, 688 F.Supp. 1513 (N.D.Fla.1988). Consequently, as to those policies whose interpretation is controlled by Florida law, no insurance coverage is available to cover costs of complying with court-ordered restitution or injunctions.[10]

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Defendants' Motion for Partial Summary Judgment That No Coverage Exists for Asbestos–Related Building Claims Involving Intentional Conduct, Punitive Damages, or Equitable Relief is granted in part and denied in part in accordance with the findings set forth hereinabove. It is further

ORDERED, ADJUDGED AND DECREED that the Motion of Insurance Company of North America and California Union Insurance Company for Partial Summary Judgement that No Coverage Exists for Asbestos–Related Buildings Claims Involving Intentional Conduct, Punitive Damages or Equitable Relief is granted in part and denied in part in accordance with the findings set forth hereinabove.

DONE AND ORDERED.

---

10. Historically, equitable relief was only available where the plaintiff demonstrated no adequate remedy at law existed. However, this requirement, and therefore the distinction between legal and equitable remedies inherent in that requirement, has generally been abolished. 4 Charles A. Wright et al., Federal Practice and Procedure § 1044, at 145 (2d ed. 1984). There-

fore, perhaps the best theoretical check of the validity of the various positions taken by courts on this issue would be to determine whether a plaintiff, having obtained a mandatory injunction or restitutionary relief, is estopped from pursuing legal damages for the same or similar injury.